IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF ALABAMA
SOUTHERN DIVISION

| | |
|---|---|
| SANDRA E. WAIT and HAILEY E. CROWLEY, | ) ) ) ) |
| Plaintiffs, | ) ) |
| vs. | ) ) ) CIVIL ACTION NO. 15-00285-CG-M |
| ROUNDTREE MOBILE, LLC, et al., | ) ) ) ) |
| Defendants. | ) |

**ORDER**

This matter is before the Court on the Motion for Summary Judgment (Doc. 22) and Memorandum in Support (Doc. 23) filed by BMW Financial Services NA, LLC ("BMW"), the Response in Opposition and Motion for Summary Judgment (Doc. 25) filed by Sandra E. Wait ("Wait") and Hailey E. Crowley ("Crowley") (collectively, "Plaintiffs"), BMW's Motion to Deny or Continue Plaintiffs' Motion for Summary Judgment (Doc. 28), BMW's reply to Plaintiffs' response (Doc. 30), BMW's Response in Opposition to Plaintiffs' Motion for Summary Judgment (Doc. 31), and Plaintiffs' reply to BMW's response (Doc. 32). For the reasons set forth herein, BMW's motion for summary judgment is due to be **GRANTED IN PART and DENIED IN PART**, Plaintiffs' motion for summary judgment is due to be **DENIED**, and BMW's motion to deny or continue Plaintiffs' motion for summary judgment is due to be **GRANTED**.

## I. BACKGROUND

This case was removed from the Circuit Court of Mobile County, Alabama, to this Court pursuant to diversity jurisdiction. (Doc. 2). Plaintiffs allege that Wait purchased a vehicle from Roundtree Mobile, LLC ("Roundtree"), a "dealer of new and used cars." (Doc. 2-1, pp. 3-4). The vehicle was manufactured by FCA US, LLC ("FCA" or "Chrysler"), and allegedly covered by a manufacturer's warranty. Id. Roundtree assigned the sales contract to BMW. Id. at 4. Plaintiffs allege that Wait informed Roundtree that she needed the vehicle to travel locally and also for Crowley to travel to Miami, Florida. Id. Plaintiffs claim that the vehicle began suffering "serious defects" in just over a month after the purchase, including the failure of the vehicle's power steering. Id. Plaintiffs allege that the vehicle was taken to authorized dealers for repairs several times to no avail. Id. at 4-5. Plaintiffs assert that Wait informed BMW about the issues, but BMW only repossessed the vehicle. (Doc. 2-1, p. 6). Plaintiffs subsequently sued Roundtree, FCA, and BMW on various claims. The claims levied against BMW are breach of warranty, breach of contract, and violation of the Truth in Lending Act. Id. at 8-9. BMW filed a counterclaim against Wait, alleging that she ceased making payments on the vehicle shortly after purchase and therefore breached the contract. (Doc. 6, p. 19).

BMW filed a motion for summary judgment. (Doc. 22). In its supporting memorandum, BMW requests judgment in its favor on claims asserted by Plaintiffs of breach of warranties, breach of contract, Magnuson-Moss Warranty Act violations, and Truth in Lending Act violations. (Doc. 23). BMW also requests the

2

Court to limit any damages awarded to Plaintiffs under the Federal Trade Commission's Holder Rule. Id. at 11-13. In their response, Plaintiffs filed a motion for summary judgment, asking the Court to rule that Wait no longer owes BMW the balance on the vehicle because of the vehicle's defects. (Doc. 25-1, pp. 4-5). Both parties submitted a joint stipulation of facts, consisting of the sales contract and a service contract entered into by Wait. (Doc. 26). BMW filed a motion for the Court to deny or continue Plaintiffs' motion for summary judgment. (Doc. 28). The parties then traded replies and responses to the motions for summary judgment. (Docs. 30, 31, 32).

## II. ANALYSIS

### A. The Summary Judgment Standard

Federal Rule of Civil Procedure 56(a) instructs that "[t]he court shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." The trial court's mission is to "determine whether there is a genuine issue for trial" and not to "weigh the evidence." See Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 249 (1986).

The burden is on the moving party to show that there is no genuine dispute as to any material fact. Id. at 256. In conducting its summary judgment analysis, the Court must construe all evidence "in the light most favorable to the party opposing the motion." United States v. Diebold, Inc., 369 U.S. 654, 655 (1962).

After the movant meets its burden, the burden shifts to the nonmoving party

3

"to make a showing sufficient to establish the existence of an element essential to that party's case." Celotex Corp. v. Catrett, 477 U.S. 317, 322 (1986). If the nonmoving party fails to do so, the "complete failure of proof concerning an essential element of the nonmoving party's case necessarily renders all other facts immaterial." Id. at 323. Further, Rule 56 "requires the nonmoving party to go beyond the pleadings and by her own affidavits, or by the depositions, answers to interrogatories, and admissions on file, designate specific facts showing that there is a genuine issue for trial." Id. at 324 (internal quotation marks omitted). There is no genuine issue for trial "[w]here the record taken as a whole could not lead a rational trier of fact to find for the non-moving party." Matsushita Elec. Indus. Co. v. Zenith Radio Corp., 475 U.S. 574, 587 (1986).

### B. Breach of Warranty

#### 1. Express Warranty

In the complaint, Plaintiffs claim that "Roundtree was bound by the express warranty provided by Chrysler on all Chrysler vehicles sold by Roundtree." (Doc. 2-1, p. 7). Plaintiffs did not address the express warranty in their response (Doc. 25-1) or reply (Doc. 32). Plaintiffs argue in the complaint that BMW is liable for Roundtree's breach of the express warranty because the sales contract was assigned to BMW. (Doc. 2-1, p. 8).

BMW argues in its motion for summary judgment that there was no breach of an express warranty because neither BMW nor Roundtree provided a warranty to Plaintiffs. (Doc. 23, p. 3). BMW asserts that Plaintiffs are attempting to impose the

4

manufacturer's warranty on BMW and Roundtree, which is prohibited under state law according to Dairyland Ins. Co. v. Gen. Motors Corp., 549 So. 2d 44 (Ala. 1989). BMW claims that Roundtree "specifically disclaimed the [manufacturer's] warranty." (Doc. 23, p. 3).

Express warranties are created and governed by statute, found in Alabama's version of the Uniform Commercial Code:

> (1) Express warranties by the seller are created as follows:
>
>> (a) Any affirmation of fact or promise made by the seller to the buyer which relates to the goods and becomes part of the basis of the bargain creates an express warranty that the goods shall conform to the affirmation or promise.
>>
>> (b) Any description of the goods which is made part of the basis of the bargain creates an express warranty that the goods shall conform to the description.
>>
>> (c) Any sample or model which is made part of the basis of the bargain creates an express warranty that the whole of the goods shall conform to the sample or model.
>
> (2) It is not necessary to the creation of an express warranty that the seller use formal words such as "warrant" or "guarantee" or that he have a specific intention to make a warranty, but an affirmation merely of the value of the goods or a statement purporting to be merely the seller's opinion or commendation of the goods does not create a warranty.

Ala. Code § 7-2-313 (LexisNexis 2006).

The first logical step in proving a breach of express warranty claim is showing the existence of an express warranty. The only assertion that Plaintiffs make in their complaint regarding the presence of an express warranty in the sales contract with Roundtree is that Roundtree is bound by the manufacturer's warranty. BMW's counterargument that Roundtree provided no express warranty

5

to Plaintiffs is persuasive. Alabama courts have held "that unless a dealer specifically adopts the warranty of the manufacturer then he is not bound thereby." Courtesy Ford Sales, Inc. v. Farrior, 298 So. 2d 26, 31 (Ala. Civ. App. 1974), superseded by rule on other grounds, Arnold v. Campbell, 398 So. 2d 301 (Ala. Civ. App. 1981); see also Dairyland Ins. Co., 549 So. 2d at 47. The sales contract does not make any statement about adopting the manufacturer's warranty, and, in fact, the contract disclaims all warranties. (Docs. 23-2, 26-1). The Court finds that Roundtree did not adopt the manufacturer's warranty, and no evidence has been presented as to any other form of express warranty. Because Plaintiffs' breach of express warranty claim against BMW hinges on Roundtree's liability for the same, summary judgment is due to be granted to BMW on this claim.

## 2. Implied Warranties

Plaintiffs claim in the complaint that Roundtree breached the implied warranties of merchantability and fitness for a particular purpose. (Doc. 2-1, pp. 6-7). Specifically, Plaintiffs argue that "[a]n implied warranty that the Vehicle was merchantable arose by operation of law as part of the sale" and that "Roundtree breached the implied warranty of merchantability by delivering goods that were not in merchantable condition when sold or at any time thereafter." Id. at 6. Plaintiffs further state that "Roundtree breached the implied warranty of merchantability by delivering goods that were not fit for the ordinary purposes for which automobiles are used (safe, reliable transportation on public roads)." Id. at 7. Plaintiffs also claim that they informed Roundtree that Crowley would use the vehicle to travel

6

between Mobile, Alabama, and Miami, Florida. Id. Since the vehicle's defects made the car "unsafe," rendering the car useless for Crowley's need to travel, Roundtree violated the implied warranty of fitness for a particular purpose. Id. Finally, Plaintiffs claim that BMW is liable for Roundtree's breach because the sales contract was assigned to BMW. Id. at 8.

In the motion for summary judgment, BMW disputes the existence of the implied warranties by asserting that the terms of the contract disclaim all implied warranties. (Doc. 23, p. 4). BMW claims that the disclaimer meets the visibility and language requirements of the Alabama Commercial Code. Id. at 4-5. Plaintiffs counter that the disclaimer is not conspicuous. (Doc. 25-1, p. 2). Specifically, Plaintiffs argue that the disclaimer lacks conspicuity because it is on the back of the contract instead of the front, stating, "A reasonable person in [Wait's] position would not have noticed the disclaimer, because nothing on the face of the document she signed indicated that the reverse side of the document contained any warranty information or disclaimers of her warranty rights." Id. Plaintiffs further argue that the disclaimer is ambiguous because of language regarding a sales contract and the manufacturer's warranty. Id. at 2-3.

Like express warranties, implied warranties in Alabama are created and governed by statute. The statute for the implied warranty of merchantability states:

> (1) Unless excluded or modified (Section 7-2-316), a warranty that the goods shall be merchantable is implied in a contract for their sale if the seller is a merchant with respect to goods of that kind.

Ala. Code § 7-2-314(1) (LexisNexis 2006). The statute for the implied warranty of fitness for a particular purpose states:

7

> Where the seller at the time of contracting has reason to know any particular purpose for which the goods are required and that the buyer is relying on the seller's skill or judgment to select or furnish suitable goods, there is unless excluded or modified under Section 7-2-316 an implied warranty that the goods shall be fit for such purpose.

Ala. Code § 7-2-315 (LexisNexis 2006). Finally, Alabama provides the merchant an option to exclude implied warranties from the contract:

> (2) Subject to subsection (3), to exclude or modify the implied warranty of merchantability or any part of it the language must mention merchantability and in case of a writing must be conspicuous, and to exclude or modify any implied warranty of fitness the exclusion must be by a writing and conspicuous. Language to exclude all implied warranties of fitness is sufficient if it states, for example, that "There are no warranties which extend beyond the description on the face hereof."

Ala. Code § 7-2-316(2) (LexisNexis 2006). Alabama's Commercial Code also defines "conspicuous."

> (10) "Conspicuous," with reference to a term, means so written, displayed, or presented that a reasonable person against which it is to operate ought to have noticed it. Whether a term is "conspicuous" or not is a decision for the court. Conspicuous terms include the following:
>
> > (A) A heading in capitals equal to or greater in size than the surrounding text, or in contrasting type, font, or color to the surrounding text of the same or lesser size; and
> >
> > (B) Language in the body of a record or display in larger type than the surrounding text, or in contrasting type, font, or color to the surrounding text of the same size, or set off from surrounding text of the same size by symbols or other marks that call attention to the language.

Ala. Code § 7-1-201(b)(10) (LexisNexis 2006).

### a. Position of the Disclaimer on the Back of the Contract

Plaintiffs cite two cases that are not binding on this Court in support for their argument that the disclaimer's position on the back of the contract renders it

inconspicuous: Moorer v. Hartz Seed Co., 120 F. Supp. 2d 1283 (M.D. Ala. 2000), and Massey-Ferguson, Inc. v. Utley, 439 S.W.2d 57 (Ky. 1969). The disclaimer here meets the standard set forth in Moorer, and this case is distinguishable from Massey-Ferguson.

In Moorer, the front of the contract stated "ADDITIONAL TERMS, CONDITIONS, AND LIMITED WARRANTY ON BACK." Moorer, 120 F. Supp. 2d at 1291. The back of the contract contained the disclaimer. Id. The district court found that "[t]he bold language on the front of the invoices informs the reader that terms and conditions dealing with limitation of warranties can be found on the back of the invoice" and went on to hold that the Alabama disclaimer statute had been satisfied. Id. The Court does not read Moorer so narrow as to require specific language instructing the purchaser that warranty information is on the reverse side. The front of the contract in the current case states, "You acknowledge that you have read both sides of this contract . . . before signing below." (Doc. 23-2, p. 1). This statement is in larger type than much of the contract and also in bold, meeting the definition of "conspicuous." The front of the contract also states, "See back for other important agreements." Id. While in a smaller size font, the statement is printed in bold, also meeting the definition of "conspicuous." The contract states in regular type, "By signing this contract, you choose to buy the vehicle on credit under the agreements on the front and back of this contract." Id. Perhaps clairvoyantly, the contract states just above the signature line in all caps and bold print the following: "CAUTION – IT IS IMPORTANT THAT YOU THOROUGHLY READ THE

CONTRACT BEFORE YOU SIGN IT." Id. These provisions are sufficient to alert a reasonable person to the existence of another side to the contract.

In Massey-Ferguson, the location of the disclaimer on the back of the contract was only one of several grounds the Kentucky court used to find a lack of conspicuity. See Massey-Ferguson, 439 S.W.2d at 59. The court stated, "Besides being in ordinary type, the exclusion was on the back of the instrument, with nothing on the front, except some words likewise in ordinary type, to direct attention to it." Id. The contract here is distinguishable. As discussed above, two of the three statements referring to the back of the document meet Alabama's definition of "conspicuous."

The Court of Civil Appeals of Alabama has found a disclaimer similar to the one here sufficient for the conspicuous requirement. See Morgan Bldg. & Spas, Inc. v. Gillett, 762 So. 2d 366, 371-72 (Ala. Civ. App. 2000). The disclaimer was on the back of that contract, "printed in all capital letters, in bold print, and in a print that was larger than the print used in the body of the contract." Id. at 372. The contract had language in bold and all caps instructing the purchaser that there were additional contract terms on the reverse side. Id. at 371. Here, there are three places on the front of the contract that refer to the back of the contract, as discussed above. The disclaimer is also in bold type, with the heading "WARRANTIES SELLER DISCLAIMS" in all caps. (Doc. 23-2, p. 2).

The Court finds as a matter of law that the position of the disclaimer on the back of the contract does not support Plaintiffs' argument that the disclaimer is

10

inconspicuous.

### b. Whether the Language of the Disclaimer Is Ambiguous

The sales contract for the vehicle states the following about warranties:

4. WARRANTIES SELLER DISCLAIMS

Unless the Seller makes a written warranty, or enters into a service contract within 90 days from the date of this contract, the Seller makes no warranties, express or implied, on the vehicle, and there will be no implied warranties of merchantability or of fitness for a particular purpose.

This provision does not affect any warranties covering the vehicle that the vehicle manufacturer may provide.

(Doc. 23-2, p. 2). Plaintiffs argue that the disclaimer is ambiguous because it references a service contract, and Wait entered into a service contract at the time of the sale. (Doc. 25-1, pp. 2-3). BMW responds that, while Wait did enter into a service contract, Roundtree was not a party to the service contract. (Doc. 30, p. 3).

The Court does not find Plaintiffs' argument persuasive. The provision disclaims all warranties "[u]nless the Seller . . . enters into a service contract." (Doc. 23-2, p. 2). The first page of the service contract clearly indicates that Wait entered into the service contract with "Fidelity Warranty Services, Inc." (Doc. 26-2, p. 1). In fact, the name of the company is typed in bold font, all caps, and larger type than any other word on the page. Id. Further, on the top of the second page, the contract states that the "parties to this service contract" are the customer and Fidelity Warranty Services, Inc. Id. at 2. Even the front of the sales contract identifies "FIDELITY W.S. INC." as the entity with whom Wait entered into the "SVC CONTRACT." (Doc. 23-2, p. 1). The mere mention of a service contract within the

11

disclaimer provision does not support Plaintiffs' contention.

Plaintiffs also suggest the last line of the disclaimer supports a finding of ambiguity, claiming, "A reasonable buyer reading this language could easily believe that the disclaimer was not something to worry about because all new cars come with a manufacturer's warranty." (Doc. 25-1, p. 3). Even if that clause provided some sort of peace of mind to the purchaser, the Court fails to see how this directs a finding that the disclaimer is ambiguous. The Court is unaware of any law or precedent that requires it to find this provision ambiguous because Plaintiffs chose to rely solely on the manufacturer's warranty rather than hedge their bets and bargain for express or implied warranties from the seller.

The Court finds that Roundtree properly disclaimed all warranties, and thus summary judgment is due to be granted to BMW on this claim.

### C. The Magnuson-Moss Warranty Act

In the complaint, Plaintiffs contend that the federal Magnuson-Moss Warranty Act "prohibits merchants from disclaiming implied warranties." (Doc. 2-1, p. 6). Specifically, Plaintiffs contend that the Act "prohibits a disclaimer of implied warranties when the seller enters into a service contract with the buyer." (Doc. 25-1, p. 3). The Magnuson-Moss Warranty Act states in relevant part:

> (a) Restrictions on disclaimers or modifications
>
> No supplier may disclaim or modify . . . any implied warranty to a consumer with respect to such consumer product if (1) such supplier makes any written warranty to the consumer with respect to such consumer product, or (2) at the time of sale, or within 90 days thereafter, such supplier enters into a service contract with the consumer which applies to such consumer product.

12

15 U.S.C. § 2308(a) (2012).

By the plain language of the statute, a supplier cannot disclaim an implied warranty if the supplier makes a written warranty to the consumer or enters into a service contract with the consumer. Plaintiffs rest their argument only on the latter. However, as discussed above, Roundtree never entered into a service contract with Plaintiffs. Rather, the parties to the service contract were Wait and Fidelity Warranty Services, Inc., rendering Roundtree's disclaimer valid. See, e.g., Priebe v. Autobarn, Ltd., 240 F.3d 584, 588 (7th Cir. 2001) (holding that "the service contract with [the third-party company] is not sufficient to prevent [the dealer] from disclaiming implied warranties"); Whitehead v. John Bleakley RV Center, Inc., Civ. Action File No. 1:09-CV-468-TWT, 2010 WL 925091, at *6 (N.D. Ga. Mar. 8, 2010) (finding that the Act did not prevent the disclaimer of warranties because the plaintiff entered into a service contract with a third party and not the seller-defendant). Because the Court finds Roundtree properly disclaimed all warranties, the disclaimer also works to BMW's benefit by virtue of the contract assignment. Thus, summary judgment for BMW is warranted as a matter of law on this claim.

### D. Breach of Contract

Both parties filed motions for summary judgment pertaining to this claim. In their complaint, Plaintiffs argue that "Roundtree breached the contract by failing to deliver the goods that were promised." (Doc. 2-1, p. 8). Plaintiffs assert that BMW is responsible for the breach as assignee of the contract. Id. Plaintiffs claim that the vehicle "was seriously defective" and that there was proper revocation. (Doc. 2-1, pp. 8-9; Doc. 25-1, pp. 3-4). According to Plaintiffs, the refusal of BMW "to provide

13

Plaintiffs a full refund" constituted a breach. (Doc. 2-1, p. 9). Further, in their motion for summary judgment, Plaintiffs request the Court to rule that "Wait clearly cannot be held liable to BMW for any alleged balance due on the contract." (Doc. 25-1, p. 4).

In its motion for summary judgment, BMW contends that it did not breach the contract but that Wait breached by failing to make the required payments. (Doc. 23, p. 9). BMW also argues that revocation of acceptance is not proper grounds for excusing Plaintiffs' breach of the contract. (Doc. 30, p. 5). BMW claims that Alabama law only contemplates revocation with the seller, and that the buyer's duty to the financing company who was assigned the contract remains intact, even if proper revocation takes place. Id. BMW cites no authority for this premise, other than arguing that, because the revocation statute only refers to the seller, the statute is limited to the seller. Id.

Under Alabama law, the claimant must prove the following elements of a breach of contract claim: "(1) the existence of a valid contract binding the parties in the action, (2) his own performance under the contract, (3) the defendant's nonperformance, and (4) damages." S. Med. Health Sys., Inc. v. Vaughn, 669 So. 2d 98, 99 (Ala. 1995). The parties agree that the first element has been met. They differ on the remainder. Revocation of acceptance in Alabama is provided by statute:

> (1) The buyer may revoke his acceptance of a lot or commercial unit whose nonconformity substantially impairs its value to him if he has accepted it:
>
>   (a) On the reasonable assumption that its nonconformity would

>be cured and it has not been seasonably cured; or
>
>(b) Without discovery of such nonconformity if his acceptance was reasonably induced either by the difficulty of discovery before acceptance or by the seller's assurances.
>
>(2) Revocation of acceptance must occur within a reasonable time after the buyer discovers or should have discovered the ground for it and before any substantial change in condition of the goods which is not caused by their own defects. It is not effective until the buyer notifies the seller of it.
>
>(3) A buyer who so revokes has the same rights and duties with regard to the goods involved as if he had rejected them.

Ala. Code § 7-2-608 (LexisNexis 2006).

The crux of this dispute seems to hinge on whether the vehicle was defective. The evidence presented by the parties that tends to prove or disprove the defective nature consists of dueling affidavits. (Docs. 25-2, 31-1). Wait's affidavit states that the power steering system failed multiple times, which "made the vehicle nearly impossible to drive." (Doc. 25-2, p. 1). The affidavit of a BMW employee counters that the car was driven over 9,000 miles and that "the vehicle was of standard condition, without any major nonconformities." (Doc. 31-1, pp. 2-3). BMW also submitted a "Vehicle Condition Report" prepared for the sale of the repossessed vehicle at auction, which lists several issues with the vehicle but nothing about the power steering. (Docs. 31-3, 31-5).

The Court finds that a genuine dispute of material fact exists as to whether the car was defective. Resolution of this issue will likely determine which party breached the contract and whether Plaintiffs' revocation was warranted. The Court does not, however, address whether Plaintiffs followed proper procedure in revoking

the contract. To the extent that BMW argues that revocation has no affect on Plaintiffs' duty to BMW because, although it was assigned the contract, it is a financing company and not a seller, the Court finds that BMW's position is contrary to the FTC Holder Rule, which is discussed in more detail below. See 16 C.F.R. § 433.2 (2015) (providing that "[a]ny holder of this consumer credit contract is subject to all claims and <u>defenses</u> which the debtor could assert against the seller") (emphasis added). The Court holds that a grant of summary judgment on this claim to either Plaintiffs or BMW would be premature, and therefore the motions must be denied.

### E. The Truth in Lending Act

In the complaint, Plaintiffs assert that Roundtree "unilaterally and secretly altered the cash price [of the vehicle], inexplicably increasing it by approximately $1,821.70." (Doc. 2-1, p. 9). Plaintiffs further argue that "Roundtree then designed its Truth in Lending disclosures around this inflated figure," in violation of the Truth in Lending Act. <u>Id.</u>

In its motion for summary judgment, BMW argues that it "cannot be held liable under the Truth in Lending Act, however, because [it] was the assignee of the loan, and because the alleged violation was not apparent on the face of the disclosure statement." (Doc. 23, pp. 9-10). Plaintiffs did not respond to BMW's argument.

The Truth in Lending Act seeks to better inform consumers when purchasing on credit, requiring lenders to provide certain disclosures to the purchaser. See 15 U.S.C. § 1631 (2012). For a sales contract, BMW points out that an action that "may

16

be brought against a creditor may be maintained against any assignee of such creditor only if the violation for which such action or proceeding is brought is apparent on the face of the disclosure statement." Id. § 1641(a). The statute goes on to provide examples:

> For the purpose of this section, a violation apparent on the face of the disclosure statement includes, but is not limited to (1) a disclosure which can be determined to be incomplete or inaccurate from the face of the disclosure statement or other documents assigned, or (2) a disclosure which does not use the terms required to be used by this subchapter.

Id. BMW also directs the Court to an Eleventh Circuit case that treated a financing company as an assignee, even though the assignment was executed simultaneously with the sale of the vehicle. See generally Ellis v. Gen. Motors Acceptance Corp., 160 F.3d 703 (11th Cir. 1998).

Roundtree clearly assigned the sales contract to BMW. (Doc. 23-2, p. 1). In any event, Plaintiffs argue that the contract was assigned to BMW, as discussed above, so the parties are in agreement on this point. The Court does not find anything on the face of the contract that would lead an observer to believe that the Truth in Lending disclosures are invalid. As in Ellis, to find a discrepancy here, the Court "would need to resort to evidence or documents extraneous to the disclosure statement," which "the plain language of the statute forbids us to do." Ellis, 160 F.3d at 709. Regardless, Plaintiffs have abandoned this claim. See, e.g., Ryan v. Int'l Union of Operating Eng'rs, Local 675, 794 F.2d 641, 643 (11th Cir. 1986) (holding that "a party may not rely on his pleadings to avoid judgment against him"); Shamburger v. City of Mobile, Civ. Action No. 06-0838-CG-M, 2008 WL 2874363, at

*1 (S.D. Ala. July 23, 2008) (deeming abandoned claims asserted in a complaint but not argued in response to a motion for summary judgment). The Court finds that BMW is entitled to summary judgment on this claim.

### F. The Federal Trade Commission's Holder Rule

In the motion for summary judgment, BMW claims that "[b]oth the FTC Holder Rule as well as the explicit terms of the Contract provide that recovery by the Debtor shall not exceed amounts paid by the Debtor." (Doc. 23, p. 11). Thus, "if the Plaintiffs' claims survive, . . . the Plaintiffs' right to recover must be limited to the amounts paid by the Plaintiffs under the contract, or in this case, $900.00." Id. An employee for BMW asserted in an affidavit that Plaintiffs made only $900.00 in payments. (Doc. 23-1, p. 2). Plaintiffs seemingly concede, stating, "As a fallback position, BMW asks the Court to limit its liability to the $900 which they claim was actually paid to them by the Plaintiffs. This is only appropriate inasmuch as the Plaintiffs seek affirmative recovery from BMW for breach of contract." (Doc. 25-1, p. 4).

> The FTC Holder Rule states the following:
>
> In connection with any sale or lease of goods or services to consumers, in or affecting commerce . . . , it is an unfair or deceptive act or practice . . . for a seller, directly or indirectly, to:
>
> (a) Take or receive a consumer credit contract which fails to contain the following provision in at least ten point, bold face, type:
>
> NOTICE
>
> ANY HOLDER OF THIS CONSUMER CREDIT CONTRACT IS SUBJECT TO ALL CLAIMS AND DEFENSES WHICH THE DEBTOR COULD ASSERT AGAINST THE SELLER OF GOODS OR SERVICES OBTAINED PURSUANT HERETO OR WITH THE

>PROCEEDS HEREOF. RECOVERY HEREUNDER BY THE DEBTOR SHALL NOT EXCEED AMOUNTS PAID BY THE DEBTOR HEREUNDER.

16 C.F.R. § 433.2(a) (2015). The sales contract repeats this paragraph word-for-word, in all caps and bold font. (Doc. 23-2, p. 2). While it is difficult to determine by the filings whether the paragraph uses the required font size, Plaintiffs have not argued to the contrary. BMW also cites to an FTC Holder Rule case from our sister court in the Middle District of Alabama holding that buyers could not recover more than they had paid to the financing company. See Eachen v. Scott Hous. Sys., Inc., 630 F. Supp. 162, 166 (M.D. Ala. 1986). BMW's arguments are well taken.

The Court finds that summary judgment should be granted to BMW on this claim. To the extent that Plaintiffs are entitled to damages pursuant to a claim under the FTC Holder Rule, the recovery is limited to the amount paid by Plaintiffs on the contract. This ruling does not prevent Plaintiffs from pursuing alternative remedies, should they be warranted.

## CONCLUSION

BMW's motion for summary judgment is hereby **GRANTED IN PART and DENIED IN PART**, Plaintiffs' motion for summary judgment is **DENIED**, and BMW's motion to deny or continue Plaintiffs' motion for summary judgment is **GRANTED**.

**DONE** and **ORDEREED** this 10th day of November, 2015.

/s/ Callie V. S. Granade
UNITED STATES DISTRICT JUDGE